# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

FRATERNITÉ NOTRE DAME, INC.,    )
            Plaintiff,        )
                      )     No. 15 CV 50312
v.                        )     Judge Iain D. Johnston
                      )
COUNTY OF McHENRY,        )
            Defendant.     )

## MEMORANDUM OPINION AND ORDER

The Fraternité is a religious order that operates a mission. It sued defendant County of McHenry after the County denied various Fraternité's conditional uses and variances needed to expand its mission work. After years of effort and multiple settlement conferences with the Court, the parties reported they had reached an agreement to settle this dispute. However, news of a settlement prompted Coral Township and Jeff Purtell, who lives next to the proposed site for the expanded operations, to intervene so they can have a say in any settlement agreement. For the following reasons, the Court denies the petition to intervene.

## BACKGROUND

According to the complaint, Fraternité Notre Dame was founded in 1977. In 2000, it opened a facility that included a soup kitchen and food pantry in Chicago, Illinois, and in 2005 opened a mission on 65 acres of property that it owns in Marengo, Illinois. Marengo is located in McHenry County, Illinois. That same year, Fraternité obtained a conditional use permit from the McHenry County Zoning Board of Appeals (ZBA) to allow construction of a monastery, a church, a seminary, a convent, a retreat center, a bakery, a printing press, and a cemetery, though with limits on seating and sleeping capacities and on the retail sale of baked goods and printed materials.

In September 2014, Fraternité petitioned the ZBA to amend the conditional use permit it obtained in 2005 to add 30 acres of property it had acquired, and to allow it to build a barn for a commercial kitchen for beer and wine making, a boarding school, a nursing home, and a gift shop to sell religious items plus pastries, beer and wine made on its property, as well as a beer and wine tasting area. Coral Township, one of the proposed intervenors in this case, filed an appearance in the ZBA proceeding and moved to dismiss Fraternité's petition. Dkt. 90 at Ex. 1. Coral Township resident Jeff Purtell, another of the proposed intervenors in this case, attended public hearings on Fraternité's petition before the ZBA, and he and Coral Township state that they "voiced their objections throughout the proceedings." Dkt 97 at 5; *see also* Dkt. 87 at 1 (Proposed Intervenors' Status Report on Judge Johnston's Inquiries). On September 15, 2015, the McHenry County Board denied Fraternité's petition.

Fraternité then filed this lawsuit on December 16, 2015, alleging that the denial of its petition violated its rights under the U.S. and Illinois constitutions, the Religious Land Use and Institutionalized Persons Act, and the Illinois Religious Freedom Restoration Act. The filing of the lawsuit was reported in several area newspapers. Neither Coral Township or Jeff Purtell sought to intervene at the time, though they state that they "likely had knowledge of the lawsuit from its inception." Dkt. 93 at 9. The media also reported the parties' efforts to settle, which continued over the course of five different settlement conferences beginning in 2016. Coral Township and Robert Naylor (later replaced by Jeff Purtell) first moved to intervene on June 15, 2018. They are proceeding under Federal Rules of Civil Procedure 24(a), which governs intervention of right, 24(b), which governs permissive intervention, and 19, which governs joinder of a required party.

**ANALYSIS**

1. *Intervention of Right*

To intervene as of right under Fed. R. Civ. P. 24(a), the proposed intervenor must satisfy each of the following: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *State of Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (internal quotations marks and citations omitted). The non-conclusory allegations of the motion must be accepted as true, and the motion should not be dismissed "unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Id.* (internal quotation marks and citation omitted). However, the burden to establish each element falls on the movant. *United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003).

The Court begins with the timeliness factor. To determine timeliness, a court looks to four factors: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances." *Id.* (internal quotation marks and citation omitted). "The timeliness requirement forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute." *Grochocinski v. Mayer Brown Row & Maw, LLP*, 719 F.3d 785, 797 (7th Cir. 2013). A proposed intervenor that "'dragged its heels' after learning of a lawsuit" cannot establish timeliness. *Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994). The balancing of the timeliness factors is left to the sound discretion of the district court. *Gronchocinski*, 719 F.3d at 798.

The proposed intervenors argue that their motion is timely because they filed it "once the Township and Purtell formed the belief that [their] interests may no longer be adequately represented and [their] right to intervention became ripe." Dkt. 97 at 6. The proposed intervenors contend they formed that belief "between April of 2018 and July of 2018" based on former proposed intervenor Roger Naylor's "numerous communications with the State's Attorney, the Chairman of the County Board, and several County Board members," from which

he learned "that the State's Attorney was seeking to settle the case in a way that undermined the County's Uniform Development Ordinance." *Id.* at 7. They further contend that until those communications, they had anticipated that the defendant's interest would have been "to see the integrity of the County's Uniform Development Ordinance preserved, which was the reason that the County Board voted against the Plaintiff's requested zoning relief." *Id.*

The proposed intervenors' decision to sit on the sidelines while this case worked its way through the eve of a settlement was unreasonable. The Seventh Circuit recently addressed the similar decision to sit on the sidelines made by the proposed intervenor in *State of Illinois v. City of Chicago*, 912 F.3d 979 (7th Cir. 2019). In that case, in August 2017 the State of Illinois sued the City of Chicago over its police officers' allegedly repeated use of excessive force. *Id.* at 983. Days later the district judge granted the parties' motion to stay the proceedings while they negotiated a consent decree. *Id.* At the time, the Fraternal Order of Police, Chicago Lodge No. 7, publicly expressed its opposition to any consent decree, but did not yet seek to intervene. *Id.* During the coming months the police union met with the state to express its concern that any consent decree might conflict with provisions of the parties' collective bargaining agreement. *Id.* The state repeatedly assured the union that the parties were working to avoid any impact on rights under the collective bargaining agreement to avoid the need for the union to seek to intervene. *Id.* The district court met with the parties four times between March and May of 2018 to discuss the consent decree negotiations. *Id.* at 984. In June 2018, the union moved to intervene, which the district judge denied as untimely. *Id.* The union appealed.

The Seventh Circuit affirmed the district judge's determination that the union's motion to intervene was untimely. First, it agreed with the district judge's determination that the union should have known of its interest in the case from the time the state filed suit because the union had immediately expressed its opposition to a consent decree. *Id.* at 984-85. The court held that to be timely, a motion to intervene must be filed as soon as the intervenor knows "'that its interests *might* be adversely affected by the outcome of the litigation.'" *Id.* at 985 (quoting *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) (emphasis in original)). It rejected the argument that the union had reasonably relied on the state's assurances that it was protecting the union's interests in the litigation. *Id.* It also rejected the argument that the timeliness inquiry should focus not on when an intervenor learns its interests *might* be affected by litigation, but rather on when intervenor first realizes that a party it thought was protecting its interests was not doing so. *Id.* at 985-86. *See also In re Emerald Casino*, 746 Fed. Appx. 586, 589 (7th Cir. 2019) ("We determine timeliness from the time the potential intervenors learn that their interest *might* be impaired.") (internal citation and quotation marks omitted, emphasis added by *In re Emerald Casino*).

As for the other timeliness factors, the Seventh Circuit in *State of Illinois* held they too supported the district judge's determination that the motion to intervene was untimely. The court held that the existing parties to the lawsuit would be prejudiced by intervention because "'[o]nce parties have invested time and effort into settling a case it would be prejudicial to allow intervention.'" *Id.* at 986-87 (quoting *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991)). It also affirmed the district judge's conclusion that the potential prejudice to the union was insufficient to mandate intervention. In particular, the Seventh Circuit noted that because the district judge would need to approve any consent decree, the union could be heard at a fairness

hearing, and so any assertion of prejudice was "largely speculative." *Id.* at 988. Finally, the court rejected the argument that the state's assurances that it would protect the union's interests constituted an unusual circumstance the district judge should have considered. The Seventh Circuit held that although the union "never squarely presented that legal theory to the district court," the district court had nevertheless adequately considered all of the facts underlying the argument" and found them unpersuasive. *Id.* at 989.

Like the union in *State of Illinois*, the proposed intervenors here knew of their interests in the outcome of this litigation at its inception, as demonstrated by the fact that Coral Township sought to intervene in the proceeding even earlier while still before the ZBA. After its effort failed, Coral Township and Jeff Purtell spoke out against Fraternité's petition at public hearings. The proposed intervenors' conduct shows that from the beginning they thought their interests *might* be adversely affected by Fraternité's efforts to obtain from the County an amendment to its conditional use permit.

The proposed intervenors argue that they were nevertheless entitled to rely on their belief that the County would protect their interests in this lawsuit because the County is a governmental body. In support, they rely on *Ligas v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007), in which the Seventh Circuit held that "when the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests." However, in *Ligas,* the parties all agreed that the intervenors' petition was timely; the question at hand was whether the governmental body already adequately protected the intervenors' interests so that intervention was unnecessary, which is a separate factor apart from timeliness that an intervenor must establish under Rule 24(a). The court in *Ligas* had no occasion to address the timeliness of a proposed intervenor's realization that a governmental body was not protecting its interests. Here, the proposed intervenors demonstrated as early as Coral Township's attempt to intervene in the ZBA proceedings in 2014-15 that they believed that their interests might be not be adequately represented by, and be adversely affected by, the County, which is the relevant inquiry into timeliness applied in *State of Illinois*, 912 F.3d at 985.

The intervenors also rely on *Freesen, Inc. v. County of McLean*, 659 N.E.2d 411, 415 (Ill. App. Ct. 1995), in which the state appellate court reversed the circuit court's denial of a motion to intervene on timeliness grounds. The state appellate court found that the intervenor was entitled to believe that the defendant Village of Downs would represent his interests in a land use dispute, and so his motion to intervene, filed shortly after media reports that the defendants had reached a compromise to allow the plaintiff to continue operating an asphalt plant, was timely. *Freesen* is unpersuasive. First, it is a state case applying state procedural law, and the proposed intervenors have not explained how federal procedural law is similar or why this Court should look to Illinois law in applying the federal rules of procedure or otherwise deviate from the Seventh Circuit's analysis in *State of Illinois*. Second, in *Freesen,* the court noted that the motion to intervene came early in the case when "the only orders entered related to scheduling and the County of McLean had not yet filed an answer." *Id.* at 415. Therefore, the situation in *Freesen* is inapposite to the situation present in this case, where the parties have long been at issue, have engaged in settlement discussions before the Court dating back nearly three years, and where these years of negotiations were on the verge of producing a proposed settlement.

The timeliness factors that look to prejudice also do not support the motion to intervene. The parties have spent years negotiating a settlement agreement, including multiple days in settlement conferences before this Court. Accordingly, the prejudice the parties would face if the motion to intervene were granted would be great. *See State of Illinois*, 912 F.3d at 986-87. In contrast, the prejudice to the proposed intervenors is at best speculative because, as with the union in *State of Illinois*, the intervenors have a different forum for expressing their concerns. Any act by the County of McHenry to approve the negotiated settlement proposal can occur only after "advance notice of and the right to attend all meetings at which any business of a public body is discussed or acted upon in any way." 5 ILCS 120/1. The proposed intervenors have not asserted that they would be unable to express their interests and views if a settlement proposal is presented for approval by the County Board, ameliorating any concern about prejudice to the intervenors.

Finally, the proposed intervenors have identified no unusual circumstances that would support intervention. The unusual circumstance described in the motion to intervene occurred when "[r]epresentatives of the Defendants informed the Intervenors, more than once, and therefore a sufficient number of times to confirm, that the Defendants were no longer adequately representing the Intervenors' interests." Dkt. 93 at 8-9. Up until then, the proposed intervenors contend that the "County of McHenry coordinated its defense with Coral Township in order to protect their interests in opposing Fraternité's Proposed Development." Dkt. 97 at 5. Again, in support, the proposed intervenors rely on *Ligas v. Maram*, 478 F.3d at 774, for their contention that they reasonably relied on the County to represent their interests in this case up until the County's representatives "informed" them the County was no longer adequately representing them. But, as noted above, *Ligas* does not address timeliness.

Moreover, the proposed intervenors admit they likely knew of this lawsuit from its inception, and both the docket and media coverage from the time would have alerted them that settlement discussions began back in 2016. *See, e.g.*, Dkt. 29 (setting settlement conference for October 17, 2016). This Court's standing order on settlement conferences, which is available to the public on its webpage, advises parties that "a settlement is a *compromise* that concludes a legal dispute. And compromise occurs when the parties make concessions." Standing Order on Settlement Conferences at 3 (emphasis in original). It further warns that refusing to compromise in any way during a requested conference could result in sanctions. *Id.* It is not unusual that by agreeing to engage in settlement discussions before this Court, the County might engage in discussions about allowing Fraternité some of the relief sought in the petition the County Board previously denied. Nor is it unusual that the County would engage in such settlement efforts without the intervenors' participation or acquiescence given this Court's Standing Order requiring that all discussions at the settlement conference remain confidential. *Id.* at 3-4. Any coordination must have ended when the confidential settlement discussions began in 2016.

On balance and in an exercise of its discretion, the Court finds that the factors relevant to timeliness tilt in favor of a finding that the proposed intervenors' motion is untimely: the motion comes long after they knew their interests might be adversely affected by this litigation, the parties would be prejudiced at this stage in settlement discussions while the proposed intervenors' prejudice would be low because they can still be heard by the County Board before

any settlement is approved, and they have identified no unusual circumstances that warrants the timing of their motion. Because a motion to intervene must be timely, the Court need not address the other three requirements to establish intervention as of right.

## 2. *Permissive Intervention*

Next, the proposed intervenors seek intervene under Fed. R. Civ. P. 24(b), which allows for permissive intervention. However, as with intervention of right, the proposed intervenor bears the burden of establishing timeliness of the motion, evaluated using the same four factors relevant to whether a motion to intervene of right is timely under Rule 24(a). *Grochocinski*, 719 F.3d at 789. For all the reasons the motion to intervene is untimely under Fed. R. Civ. P. 24(a), it is also untimely under Fed. R. Civ. P. 26(b). *See United States v. City of Chicago*, 796 F.2d 205, 212 (7th Cir. 1983) (district court that denied intervention of right on timeliness grounds was within its discretion to deny permissive intervention on the same basis because "[t]imeliness is also a factor under Rule 24(b).").

## 3. *Joinder of Necessary Party*

Finally, Coral Township seeks to join the lawsuit as a necessary party under Federal Rule of Civil Procedure 19(a). Under Rule 19(a), a party is required to be joined in an action if feasible when (i) the court cannot accord complete relief in the absence of that party, or (ii) disposing of the action in the party's absence may impair its ability to protect its interest or leave the existing parties subject to multiple or inconsistent obligations. The burden of establishing that joinder is necessary falls on the party seeking joinder. *Galiot v. Midwest Tennis Programs, LLC*, No. 17 CV 4739, 2017 U.S. Dist. LEXIS 191565, at *5 (N.D. Ill. Nov. 20, 2017).

Coral Township argues that the Court cannot grant complete relief to the existing parties "because the Township would have to perform several necessary services to Fraternite to enable Fraternite to develop and use the Subject Property in the manner requested in the Complaint's prayer for relief." Dkt. 97 at 3-4. Coral Township also argues that its "statutory interest and right to object" under 55 ILCS 5/5-12009 to Fraternité's requests would be impaired if it were not joined. *Id.* at 4.

In support, Coral Township relies on a case from the federal District Court of Delaware, *Acierno v. Preit-Rubin, Inc.*, for the proposition that joinder of local governments is required when they will be "affected by the action or adequate relief cannot be awarded in their absence." *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157, 162-63 (D. Del. 2001) (internal citation and quotations marks omitted). However, the issue in *Acierno* was whether a county in Delaware was a necessary party to a collateral challenge to one of its own decisions. It did not address an Illinois township's rights to challenge a county's decisions.

Moreover, Coral Township has offered no example or elaboration on why this Court cannot grant complete relief without its presence. For instance, it has not even described the services that would be required of it if Fraternité's petition were granted, or why its presence in this case is required for it to perform those services. As discussed above regarding intervention, Coral Township has not established that it would be unable to object or otherwise express its

interests and views when any settlement proposal is presented to the County Board for its approval.

Coral Township has failed to meet its burden of establishing that its absence would impair its rights or leave the Court unable to afford complete relief. Accordingly, it has not shown that it is a necessary party to this litigation.

## CONCLUSION

For the reasons given, the petition to intervene [97] is denied.

Date: April 15, 2019          By: _____
                                      Iain D. Johnston
                                      United States Magistrate Judge